IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| VIRGIN ISLANDS TAXI | : | CIVIL ACTION |
| ASSOCIATION, et al. | : | |
| | : | No. 08-142 |
| v. | : | |
| | : | |
| V.I. PORT AUTHORITY, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                        **September 16, 2015**

Attorneys Terri Griffiths and Lee Rohn, on behalf of Plaintiffs Virgin Islands Taxi
Association (VITA) and sixty-seven individual taxi drivers, initiated this action against
Defendants V.I. Port Authority (VIPA), Virgin Islands Economic Development Authority,
Virgin Islands Economic Development Commission, six VITA board members, attorney for the
board Clive Rivers, and various Virgin Islands hotels, villas, and tour operators. The case was
stayed from July 19, 2009, until October 24, 2014, when this Court lifted the stay to determine
the issue whether Griffiths and Rohn were properly authorized to bring this action on behalf of
VITA and the individual taxi drivers. For the following reasons, the Court will dismiss all claims
brought by VITA and the individual taxi drivers.

## BACKGROUND

On December 28, 1986, the Virgin Islands Legislature enacted Act No. 5231, giving
VITA an exclusive franchise to operate public taxicab services at the Cyril E. King Airport in St.
Thomas. In their initial Complaint, Plaintiffs allege Defendants failed to enforce the franchise
and VIPA promulgated regulations violating the Act. Plaintiffs subsequently amended their
Complaint to name six VITA executive board members and attorney Clive Rivers as defendants.

On July 13, 2009, VITA's motion to stay the case, filed by attorney Clive Rivers, was
granted to determine whether Griffiths and Rohn, counsel of record, were authorized to bring this

lawsuit or to subsequently amend the Complaint to bring claims against VITA board members and Rivers. Following reassignment of the matter to this Court, the Court held a hearing on October 24, 2014, to examine VITA's authority to file the suit. At the conclusion of the hearing, the Court lifted the stay and ordered discovery and briefing on Plaintiffs' authority to file suit. The Court specifically ordered the parties to produce evidence of VITA board meeting minutes discussing the authorization of commencing and maintaining the litigation, or amending the Complaint, evidence of the individual plaintiffs' authorization of the suit and affidavits indicating their continued desire to pursue litigation, as well as VITA's Articles of Incorporation, bylaws, and any amendment thereto.

VITA produced a notice from its board, dated January 12, 2007, establishing VITA had formed a Litigation Committee to oversee all litigation arising out of the alleged franchise violation. The Litigation Committee consisted of three members, two of whom were also members of board. VITA also submitted a corporate resolution dated March 2, 2015, stating Griffiths' withdrawal from representation and its retention of Rohn as counsel in both this and the Superior Court case.[1] In doing so, the resolution further stated the board's approval of this suit, stating

> [a]n issue has arisen as to the authority of the Litigation Committee to authorize litigation in the Federal District Court Civil No. 20081142 or to make decisions regarding the Superior and District Court Litigation. The Board of Directors has reviewed the Pleadings and other filings in the District Court case, Superior Court Case and discussed the same with counsel. The VITA Board

---

[1] On February 12, 1997, VITA commenced litigation in the Virgin Islands Superior Court against some Defendants in this case alleging violations of its franchise agreement with VIPA. *See V.I. Taxi Ass'n v. V.I. Port Auth.*, 36 V.I. 43, 1997 WL 143960 (Terr. V.I. Mar. 10, 1997). The case is still pending before the Superior Court. *See V.I. Taxi Ass'n v. V.I. Port Auth.*, No. 97-117, 2015 WL 3814174, at *8 (V.I. Super. Ct. June 15, 2015) ("As of the date of this opinion, the Court has yet to receive any dispositive motions. . . . [T]he Court is unwilling to dismiss the action at this time.").

2

> of Directors resolves that all actions taken by the Litigation
> Committee in regards to the Superior Court and District Court
> cases are adopted and approved by the Board of Directors as if
> taken by the Board of Directors itself at the time.

Corp. Resolution. at 1-3.

Following discovery and submission of briefs, the Court held oral argument on March 30, 2015. At oral argument, Rohn submitted appearance on behalf of VITA and three individual plaintiffs: George Richardson, Winston Parker, and Kelvin Peters. No other individual plaintiffs were seperately represented at oral argument. Griffiths, though present at oral argument, did not represent any party.

**DISCUSSION**

### 1. **Plaintiff VITA**

VITA asserts this action is properly authorized because Griffiths and Rohn acted under their express and implied authority to file the suit. Defendants, on the other hand, argue VITA has not satisfied its burden proving this suit was authorized. The parties disagree, however, on the applicable law in drawing their conclusions.

According to VITA, Virgin Islands law is unresolved on this issue of corporate authority.[2] Defendants assert, however, "local law" exists to guide the Court. *See* 1 V.I.C. § 4

---

[2] Under Virgin Islands law, when faced with an area of unresolved law, "rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the court of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4. As VITA notes, when applying this rule, courts should not "automatically and mechanistically apply[] the Restatements of the Law." *Govt. of Virgin Islands v. Connor*, No. 2013-095, 2014 WL 702639, at *1 (V.I. Feb. 24, 2014). Instead, when considering an unresolved issue of Virgin Islands law, courts are instructed to undergo a three-step inquiry: "(1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Id.* (internal citations and quotations omitted).

(directing application of the restatements or majority common law rule only "in the absence of local laws to the contrary"). The Court agrees. Virgin Islands law in conjunction with VITA's corporate bylaws control the issue of corporate authority here.

In the Virgin Islands, a corporation is managed by its board of directors. 13 V.I.C. § 61. The board of directors, however, is free to delegate authority to a committee, so long as the board complies with procedural requirements of Virgin Islands law and any additional requirements in the corporation's bylaws. 13 V.I.C. § 65. At the very least, Virgin Islands law requires the committee be formed pursuant to a "resolution passed by a majority of the whole board" and "consist of two or more of the directors of the corporation." *Id.* But VITA's bylaws require more: each committee must have *three* board members. Any lawsuit initiated by VITA must have been authorized by either the board of directors or a properly formed committee.

VITA has failed to produce evidence this suit was authorized by the board or a properly formed committee when filed. Nothing suggests VITA's board of directors authorized the suit directly; indeed, six members of the board are named defendants. Griffiths has failed to produce

---

Following this inquiry, VITA urges the Court to apply the agency principles articulated by the Third Circuit in *Schoonejongen v. Curtis-Wright Corp.*, 143 F.3d 120 (3d Cir. 1998). In *Schoonejongen*, the Third Circuit, applying Delaware law, held a corporate executive board "may freely delegate the authority to manage the business and affairs of the corporation." *Id.* at 127. An executive board may delegate authority to the board of directors, other directors, or officers as agents of a corporation, and such authority may be express or implied. *Id.* Where express authority is typically determined by statute, certificate of corporation, bylaws, or a board or shareholder action, implied authority, on the other hand, may be circumstantially proven by showing such authority "is reasonably necessary and proper to effectuate the purpose of the office or the main authority conferred." *Id.* at 127-28.

Guided by *Schoonejongen*, VITA maintains no corporate formality was required to authorize Griffiths to initiate this action. Instead, Griffiths possessed implied authority to initiate this action on behalf of VITA. Because VITA was engaged in a parallel proceeding in the Superior Court and had retained Griffiths for that suit, VITA reasons, "[f]iling a [federal] suit was within the scope of Griffiths' *express* and *implied* authority as litigation counsel, even if VITA cannot locate Board minutes reflecting the formal vote for this specific case." Pl. VITA's Closing Br. at 12.

4

a retainer agreement between counsel and VITA, yet letters from VITA's President, Henry Thompson, and counsel, Rivers, evidence termination of Rohn and Griffith's representation of VITA. In a letter to Griffiths, dated February 27, 2009, Thompson expressly repudiates the federal action and indicates VITA was not only surprised by the suit but also states VITA did

> not grant[] [Griffiths] the authority against [VIPA] . . . . I am also appalled that you will file a lawsuit in [VITA]'s name without the express authority from the association. . . .
>
> You are on notice that effective immediately your services with the Virgin Islands Taxi Association is *TERMINATED*.

Letter from Henry Thompson to Attorney Griffiths.

Further, the formation of the Airport Litigation Committee by itself is insufficient proof *this* action was authorized. The notice establishing the committee preceded commencement of this case, and appears related to the pending parallel proceeding in the Superior Court of the Virgin Islands. While the notice makes plain the Litigation Committee's authority to oversee the pending Superior Court litigation, it is silent on the Committee's authority to commence *new* litigation. Likewise, Plaintiffs have not produced documentation—by way of meeting minutes of the Litigation Committee, VITA board, or otherwise—evidencing a vote, approval, or authorization to file a federal court case or amend the Complaint joining board members and Rivers as defendants. In any event, the Litigation Committee was procedurally defective. The committee was not formed pursuant to a resolution, as required by Virgin Islands law; rather, it was formed by issuing a notice to its drivers and shareholders. Furthermore, though the committee had three members, only two of them were members of the VITA board, in violation of VITA's bylaws. Because the formation and makeup of the litigation committee did not

conform to Virgin Islands law and VITA's corporate bylaws, any authorization it may have rendered to Griffiths and Rohn was futile.[3]

VITA argues even if this suit was not initially authorized, it was subsequently ratified by the VITA board of directors, first in 2010 and then by a corporate resolution in 2015. Ratification is governed by the principles of agency law. *See FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994) (declaring authorization, and particularly the doctrine of ratification, is "presumptively governed by principles of agency law"). An unauthorized act may be subsequently ratified by a corporation to "establish an agency relationship permitting the [unauthorized] acts . . . to constitute, in effect, acts done by the corporation." *Rees v. Mosaic Techs., Inc.*, 742 F.2d 765, 769 (3d Cir. 1984). "[R]atification of an act purported to be done for a principal by an agent is treated as effective at the time the act was done." *Id.* (quoting *In re Eastern Supply Co.*, 267 F.2d 776, 778 (3d Cir. 1959)).

This case was filed in 2008 without authorization. While VITA attempts to establish ratification occurred at VITA's July 25, 2010, board of directors meeting, the minutes reflect merely VITA's intent to rehire Griffiths, with no mention of ratifying this suit. VITA alternatively relies on the resolution passed by VITA on March 2, 2015. The Court need not resolve whether the resolution itself properly ratifies the unauthorized commencement of this action because the purported ratification is untimely and therefore ineffective.

---

[3] *Schoonejongen* provides no refuge for VITA. *Schoonejongen* analyzed corporate authority principles under Delaware law, while this case is governed by Virgin Islands law. In *Schoonejongen*, authority was expressly granted to a corporation's CEO and President, who in turn delegated authority consistent with well-established Delaware law and the corporation's bylaws. That is not the case here. There is no evidence of express or implied authority to file this lawsuit. As noted above, even if the litigation committee did authorize Griffiths to initiate this action, such a delegation was not consistent with Virgin Islands law or VITA's bylaws. Therefore, even under *Schoonejongen*, Griffiths and Rohn lacked the authority to initiate this action on behalf of VITA.

To be effective, ratification must be timely; that is, "if an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." *Id.* (quoting Restatement (Second) of Agency § 90); *accord* Restatement (Third) of Agency § 4.05 (3) (stating ratification "is not effective unless it precedes the occurrence of circumstances that would cause the ratification to have adverse and inequitable effects on the rights of third parties," including "a specific time that determines whether a third party is deprived on a right or subjected to a liability").[4] The Supreme Court noted under the Restatement's rationale, "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *Id.* In *FEC*, the Supreme Court found the Solicitor General's ratification of a petition of certiorari ineffective because the ratification occurred after the filing deadline of the petition had expired. In doing so, the Court analogized the Solicitor General's failed ratification to cases where an attempt to ratify an unauthorized suit occurred after the applicable statute of limitations had expired. *Id.* at 98-99. Both are ineffective. *See id.* ("If the Solicitor General were allowed to retroactively authorize otherwise unauthorized agency petitions after the deadline had expired, he would have the unilateral power to extend the

---

[4] This Court finds no contrary Virgin Islands law and accordingly applies the Restatement (Second) of Agency. *See* 1 V.I.C. § 4 (directing application of the restatements "in the absence of local laws to the contrary"). This Court, however, does not mechanistically apply the Restatement (Second) of Agency here. *See Connor*, No. 2013-095, 2014 WL 702639, at *1. Applying the Restatement (Second) of Agency is likewise supported by the three-step inquiry set forth by the Virgin Islands Supreme Court to determine the applicable law: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands. *See id.* Here, Virgin Islands courts have not adopted a particular rule, several federal courts—including the Supreme Court—and state courts have relied on this specific provision of the Restatement (Second) of Agency, and as a result applying the Restatement (Second) of Agency here represents the soundest rule for the Virgin Islands.

90-day statutory period . . . . Such a practice would result in blurring of the jurisdictional deadline.").

Because VITA's claims are all premised upon alleged violations of its exclusive taxi franchise, all of its claims accrued at the latest at the expiration of the franchise, which occurred in 2007.[5] VITA's supposed ratification occurred on March 2, 2015—over eight years after the accrual of plaintiffs' claims, and beyond the expiration of the statute of limitations on each of its claims.[6] Because the statute of limitations has expired on all claims, ratification comes too late and is ineffective to authorize this suit.[7]

---

[5] Act No. 5231, which granted the exclusive franchise to VITA, stated the "franchise shall commence upon the first day of the month following the acceptance of this franchise and shall continue for a period of ten years or until terminated by the Authority as provided in this [A]ct; provided, however, the franchisee shall have the option to renew the franchise for an additional ten-year period subject to the provisions of this [A]ct." 1986 V.I. Sess. Laws 5231(f). In the parallel Superior Court action, the Superior Court found the initial franchise was properly renewed by letter, dated February 13, 1995, *see V.I. Taxi Assn. v. V.I. Port Auth.*, 59 V.I. 148, 2013 WL 4027454, at *6 (V.I. Super. Ct. Aug 1, 2013), but also found the franchise agreement expired in 2007, *see V.I. Taxi Assn. v. V.I. Port Auth.*, No. 97- 117, 2015 WL 3814174, at *6 (V.I. Super. Ct. June 15, 2015).

[6] Plaintiffs' Amended Complaint asserts thirteen counts against the various Defendants: (1) Unfair Government Subsidy; (2) First Amendment, Petition Clause Violation; (3) Fourteenth Amendment Due Process Violation; (4) Racketeering; (5) RICO and CICO violations; (6) Conspiracy to Violate RICO and CICO; (7) Aiding and Abetting; (8) Breach of Fiduciary Duty; (9) Lanham Act; (10) Breach of Contract; (11) Breach of Good Faith and Fair Dealing; (12) Interference with Existing and Prospective Economic Relations; and (13) Fraud. This Court finds, and neither party disputes, Plaintiffs' breach of contract claim offers the longest statute of limitations: six years. 5 V.I.C. § 31(3)(A).

[7] VITA asserts the statute of limitations does not bar its claims under the "continuing violations" doctrine, which tolls the statute of limitations "until the date of the last injury of when the [wrongful] conduct ceased." *Anthony v. FirstBank V.I.*, 58 V.I. 224, 2013 WL 211707, at *3 (V.I. Jan. 17, 2013). The continuing violations doctrine, even if applicable, does not save VITA's claims because the last injury would have occurred at the expiration of the franchise in 2007.

VITA further asks this Court to equitably toll the statute of limitations on its claims to allow it to proceed, relying on the Third Circuit's three-pronged test when determining whether a claim previously dismissed for lack of personal jurisdiction tolled the statute of limitations. The Third Circuit held, under Virgin Islands law, the second action may be tolled if: (1) the first

Plaintiff VITA is unable to establish this suit was authorized when commenced. Further, any ratification attempt was untimely, thus ineffective. VITA's claims against VIPA will be dismissed with prejudice.

### 2. Individual Plaintiffs

The federal district courts have inherent power to dismiss a case sua sponte for failure to prosecute. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-32 (1962) (holding Federal Rule of Civil Procedure 41(b), which authorizes a defendant to move to dismiss an action for failure to prosecute, did not "abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"). Ordinarily, before dismissing a case as a sanction for a party's litigation conduct, a court must consider and balance the factors identified by the Third Circuit in *Poulis v. State Farm Fire & Casualty Co.*:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). "When a litigant's conduct makes adjudication of the case impossible, however, such balancing under *Poulis* is unnecessary." *Jones v. N.J. Bar Ass'n*, 242 F. App'x 793, 794 (3d Cir. 2007); *see also Shipman v. Delaware*, 381 F. App'x 162, 164 (3d Cir. 2010) (same); *Spain v. Gallegos*, 26 F.3d 439, 455 (3d Cir. 1994)

---

action gave the defendant timely notice of plaintiff's claim; (2) the lapse of time between the first and second actions will not prejudice the defendant; and (3) the plaintiff prosecuted the first action in good faith and diligently filed the second action. *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 204-05 (3d Cir. 2002). In adopting this rule for the Virgin Islands, the Third Circuit emphasized this tolling applies when there is a "procedurally defective first action" putting the plaintiff on notice. *See id.* at 217. Here, however, *this* is the procedurally defective action; no procedurally defective action precedes it. The doctrine of equitable tolling is inapplicable here.

(holding consideration of the *Poulis* factors was unnecessary where, after receiving an adverse ruling on some of her claims, the plaintiff "willfully refused to prosecute her remaining claims").

All but three of the individual plaintiffs—Winston Parker, George Richardson, and Kelvin Peters—have failed to prosecute their claims against Defendants. Considering the *Poulis* factors against these plaintiffs, dismissal of their claims is appropriate. First of all, these individual plaintiffs bear personal responsibility for their failure to prosecute because they have not complied with Court orders, appeared before this Court, or provided the Court any indication of their desire to continue in this suit. Secondly, permitting these plaintiffs to proceed despite their failure to prosecute would prejudice defendants by causing further delay to an already lengthy case.

Third, these individual plaintiffs have been dilatory throughout these proceedings. On September 10, 2014, the Court ordered all plaintiffs to appear for a hearing and present arguments and evidence on the initial authorization of the lawsuit, any revocation of the lawsuit, any change in Plaintiffs' representation, Plaintiffs' current representation, and—concerning the individual plaintiffs—*the continuing viability of the lawsuit as well as standing to pursue their claims*. At the October 24, 2014, hearing, Griffiths entered an appearance to represent all individual plaintiffs, but did not produce any documentation evidencing she had authority to do so. The Court ordered Griffiths to produce retainer agreements and affidavits within ten days. Griffiths assured this Court she would comply with the Court's Order, but failed to do so. While Griffiths eventually submitted retainer agreements for many of the individual plaintiffs, each was executed in 2006, two years prior to the commencement of this suit and did not evidence any individual plaintiff's continued desire to pursue litigation or utilize Griffiths as an attorney. The Court subsequently held oral argument on March 30, 2015, concerning these issues, and although

10

present at the argument, Griffiths did not enter an appearance on behalf of any plaintiff. Besides the three individual plaintiffs Rohn entered an appearance for at the argument, no individual plaintiff was represented or appeared at the argument.

Fourth, given these individual plaintiffs' repeated failure to participate in this case, the Court does not believe a monetary sanction, or any other sanction short of dismissal, would be appropriate. The Court need not consider whether the two remaining *Poulis* factors—whether the conduct of the individual plaintiffs or the attorney was willful or in bad faith and the meritorious of their claims—weigh in favor of dismissal; the other factors give this Court adequate grounds to dismiss their claims. *See Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (noting all of the *Poulis* factors need not be satisfied to dismiss a complaint). In any event, the individual plaintiffs' repeated failures to comply with this Court's Orders make adjudication of this case impossible, and dismissal of their claims would be warranted without consideration of the *Poulis* factors.

With regard to the three remaining Plaintiffs—Winston Parker, George Richardson, and Kelvin Peters—Rohn entered her representation on their behalf at the March 30, 2015, oral argument.[8] The day after oral argument, Rohn submitted individual contingent fee agreements presumably between Rohn and the three plaintiffs, dated between February 7 and March 2, 2015;

---

[8] Previously, at the October 24, 2014, hearing, Griffiths insisted *she* represented *all* the individual plaintiffs, and "Rohn has no authorization to enter into any agreements on behalf of the individual drivers." Hr'g Tr. 19, Oct. 24, 2014. Rohn seemingly agreed to withdraw as attorney for the individual plaintiffs and remain the attorney for the V.I. Taxi Association. *See id.* at 51 ("Well, Your Honor, I am simply asking to withdraw as representative of the individual plaintiffs. That will leave Ms. Griffiths as the representative of the individual plaintiffs and she can speak to what she claims is whatever prejudice she thinks would incur to the individual plaintiffs if they were represented by the V.I. Taxi Association."). Rohn further conceded she has never met with the individual Plaintiffs and she has no retainer agreement with them. *Id.* at 45-46. For these reasons, by Order on January 28, 2015, this Court previously denied Griffiths motion to withdraw as counsel for the individual drivers and appoint Rohn as substitute counsel.

however, none of the agreements identify the party being sued, Rohn failed to sign both Parker and Peters' agreements, and the date on Parker's agreement does not contain the year it was executed.[9]

In any event, Parker, Richardson, and Peters' claims must be dismissed for the same reason VITA's claims: Rohn has failed to produce evidence these individual plaintiffs authorized her to bring this suit when it was commenced on November 4, 2008. Even if the faulty contingent fee agreements were sufficient to ratify the unauthorized suit, each were executed after the expiration of the statute of limitations for each claim. Because ratification is not effective after the statute of limitations has expired, these claims will be dismissed. [10]

An appropriate Order follows.


BY THE COURT:


 /s/ Juan R. Sánchez
Juan R. Sánchez, J.


---

[9] Because all other agreements between Rohn and an individual plaintiff are dated February or March, 2015, this Court assumes Parker's agreement was likewise signed in 2015.

[10] Rohn also submitted contingency fee agreements for eight additional individual plaintiffs following the oral argument. Each agreement was dated between February 6-9, 2015—before the oral argument—but Rohn alleges she did not enter representation for these plaintiffs at oral argument because the agreements were not yet "final until after the hearing had concluded that day." Resp. to Mot. to Take Judicial Notice at 3. Whether or not this Court recognizes Rohn's representation of these plaintiffs, their claims will be dismissed for the reasons stated above.